# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9712 | **DATE** | 2/3/2003 |
| **CASE TITLE** | TIG Insurance Company vs. Darrell Smith, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [30-1] is granted. Defendant National Auto Credit, Inc.'s motion for summary judgment [33-1] is granted. Defendants Darrell Smith and Aaron Simpson's motion for summary judgment [35-1] is denied. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | FEB 04 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 FEB -3 PM 3:09 | | |
| RO | courtroom deputy's initials | FILED-ED TO | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIG INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 01 C 9712 |
| v. | ) |
| | ) Judge Ruben Castillo |
| DARRELL SMITH, AARON SIMPSON, | ) |
| BRUCE BENNETT, Administrator of the | ) |
| Estate of JON BENNETT, Deceased, and | ) |
| NATIONAL AUTO CREDIT, INC., | ) |
| | ) |
| Defendants. | ) |

DOCKETED
FEB 4 2003

## MEMORANDUM OPINION AND ORDER

This unfortunate case arises out of an automobile accident involving a car rented from National Auto Credit, Inc. ("NAC") and driven by the deceased Jon Bennett ("Bennett"). Darrell Smith ("Smith") and Aaron Simpson ("Simpson"), passengers in the rental vehicle, suffered injuries and are currently litigating a tort action against the Bennett estate in state court. NAC assumed the defense of the Bennett estate in the state tort action, but because of the demands of Smith and Simpson, NAC tendered defense to its excess policy insurer, TIG Insurance Company ("TIG"). TIG denies that it has any obligation to defend or indemnify the Bennett estate or any other party and filed this action seeking a declaration that no coverage is afforded under the excess liability policy for injuries arising out of the accident. TIG currently seeks summary judgment. (R. 30-1.) In response, NAC filed its own motion for summary judgment, and Smith and Simpson jointly filed one as well. (R. 33-1; 35-1.) For the reasons set forth herein, we grant both TIG and NAC's motions for summary judgment, (R. 30-1; 33-1), and deny Smith and Simpson's motion for summary judgment, (R. 35-1).

## RELEVANT FACTS

On June 30, 1994, Lorraine Jenkins rented a Ford Escort from a NAC Illinois office. (*See* R. 21-1, Am. Compl., Ex. 2, Rental Agreement.) Jenkins did not list her son Jon Bennett or any other individuals as additional licensed drivers on the rental agreement. The space provided on the agreement to list any additional licensed drivers was directly below Jenkins' personal information, accompanied by the following warning in capital letters: "All additional drivers, except renter's spouse, must be listed." Directly below the box for additional licensed drivers was a provision shifting primary liability to the renter's personal insurance. In the appropriate space on the agreement, Jenkins listed her personal insurance policy with Country Mutual Insurance Company ("Country Mutual") as her primary insurance. The rental agreement further states in pertinent part: "If required by the financial responsibility laws of the state in which this agreement was executed, the company shall settle or defend up to the minimum limits required for any one rental vehicle per occurrence, as it considers appropriate, any claim or suit for bodily injury and/or property damage arising out of the *authorized use of this vehicle by the renter, renter's spouse or listed additional licensed driver*." (*Id.*; emphasis added.) The financial responsibility laws at issue are contained in Chapter 9 of the Illinois Vehicle Code, 625 ILCS 5/9-101 *et seq*. In lieu of providing a bond or insurance policy as proof of financial responsibility, NAC provided a certificate of self insurance as permitted by statute. *See* 625 ILCS 5/9-102.

On July 2, 1994, Bennett, Darrell Smith and Aaron Simpson were involved in an automobile accident while Bennett was allegedly driving the Escort. Bennett was tragically killed, and passengers Smith and Simpson were injured. Smith and Simpson filed a tort action

2

against the Bennett estate and others in the Circuit Court of Cook County and demanded that NAC provide the Bennett estate with liability protection. NAC assumed and provided a defense for the Bennett estate in the Cook County tort action, but when Smith and Simpson made demands on NAC in excess of $100,000, the agency tendered and made demand upon TIG, its excess liability insurer, to assume the defense of the Bennett estate.[1]

TIG currently seeks a declaration that it has no obligation to defend or indemnify the Bennett estate because of the renter exclusion endorsement attached to the excess liability policy. In response, NAC primarily asserts that the TIG policy should not even be implicated because Smith and Simpson's claims do not arise out of the authorized use of the vehicle by the renter, renter's spouse or a listed additional licensed driver, as specified in the rental agreement.[2] Smith and Simpson in turn argue that NAC should be held liable for the collision because the authorized-use provision in the rental contract is against public policy. They further argue that NAC's liability should not be capped, and that the TIG excess liability policy thus should cover NAC's obligation.

## LEGAL STANDARDS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[1] Another related action remains pending in the Circuit Court of Will County. In that suit, Country Mutual filed a declaratory judgment action seeking to avoid coverage for damages arising out of the accident.

[2] NAC further asserts that even if it is responsible for Bennett's use of the vehicle, its liability is capped at $50,000 per person and $100,000 per occurrence, and that if these caps do not apply, the TIG policy should provide coverage.

3

matter of law." Fed. R. Civ. P. 56(c). A genuine issue exists only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial." *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). These same Rule 56 standards apply to cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). We will consider the merits of each motion separately and draw all reasonable inferences against the party whose motion is under consideration. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation omitted).

## ANALYSIS

Before the Court reaches the various statutory and contract interpretation issues addressed in the parties' briefs, we must first address the threshold issue of whether NAC is liable for the injuries incurred by Smith and Simpson. NAC argues that it is not responsible for the injuries because they did not arise out of the "authorized use of [the] vehicle by the renter, renter's spouse or listed additional licensed driver." (R. 21-1, Am. Compl., Ex. 2, Rental Agreement.) Smith and Simpson in turn contend that this contractual limitation in the rental agreement is against public policy. Thus, the Court initially must decide whether we will uphold the contractual limitation that would exclude coverage over any injuries arising out of Bennett's use of the car because he was not a listed additional driver.

Illinois courts have long held that contractual limitations will not be voided unless the limitations are against the settled public policy of the state. *See, e.g., First Fin. Ins. Co., v.*

4

*Purolator Sec., Inc.*, 388 N.E.2d 17 (Ill. App. Ct. 1979). This power to void, however, should be used sparingly and only if the contract is "clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless they be manifestly injurious to the public welfare." *First Nat'l Bank of Springfield v. Malpractice Research, Inc.*, 688 N.E.2d 1179, 1182 (Ill. 1997) (quotations and citations omitted).

To support their argument that it is against public policy to allow NAC to limit coverage only to the renter, renter's spouse or listed additional licensed driver, Smith and Simpson rely on *Hertz Corporation v. Garrott*, 606 N.E.2d 291 (Ill. App. Ct. 1992), and provisions of the Illinois Vehicle Code, 625 ILCS 5/9-101 *et seq.* and 5/7-502. The Court's review of Illinois law, however, reveals that a rental agency's liability does not extend to all cases involving a rental vehicle. According to the financial responsibility statutes, for example, a bond will cover an amount recovered only against the renter, agency or "any person operating the motor vehicle with the *customer's and the owner's express or implied consent*," 625 ILCS 5/9-103 (emphasis added). Another provision covering self insurers provides that self insurers must pay judgments rendered against "any person covered by such certificate of self-insurance." 625 ILCS 5/7-502. These statutes lead the Court to conclude that a rental agency's liability does not extend to every accident involving one of its vehicles; a rental agency may contract to limit coverage. In this case, NAC limited coverage to only the renter, the renter's spouse or any listed additional drivers. This limitation is in accord with NAC's interest in protecting its property and knowing in advance its liability exposure. Jenkins easily could have listed Bennett as an additional driver, but she did not. Therefore, we will uphold the contractual limitation because it is not clearly against the public policy of Illinois to allow a rental agency to limit coverage to certain drivers.

In fact, public policy dictates that we do not unnecessarily restrict parties in their freedom to make their own contracts. *First Nat'l Bank of Springfield*, 688 N.E.2d at 1182.

Furthermore, the instant case is distinguishable from *Garrott*. In that case, the renter accepted insurance with the agency in a contract that excluded coverage if any driver used the vehicle while under the influence of alcohol. The Illinois Appellate Court held that the blanket intoxication exclusion was against public policy because it imposed an additional sanction upon the driver at the expense of the public when criminal sanctions were already fixed. *Garrott*, 606 N.E.2d at 223-24. In the instant case, however, we are not faced with a blanket exclusion like the one in *Garrott*. The relevant contractual limitation does not constitute a double punishment or exclude coverage of all drivers in a particular situation, it simply limits coverage only to certain persons. It is not a "broad and sweeping condition[] which nullif[ies] [] protection," but a provision that allows the agency to protect its property by limiting coverage to only certain drivers. *Garrott*, 606 N.E.2d at 223.

In addition, primary coverage for the rental vehicle in this case was not even provided by NAC but by Jenkins' personal insurance carrier, Country Mutual. *See Farm Bureau Mutual Ins. Co., Inc. v. Alamo Rent A Car, Inc.*, 744 N.E.2d 300, 304-05 (Ill. App. Ct. 2001) (holding that rental car contract may shift primary liability to another insurer). Instead, Smith and Simpson should look to Country Mutual to satisfy any judgment against the Bennett estate, an issue that will be resolved by the Will County Circuit Court after the conclusion of the Cook County tort action.

Because we find that the contractual limitation in the rental agreement lawfully excludes coverage over any claims arising out of Bennett's unauthorized use of the rental vehicle, we will

not reach the issues surrounding the interpretation and application of the relevant sections of the Illinois Vehicle Code and the TIG excess insurance policy. Smith and Simpson baldly assert that Bennett's unauthorized use of the rental vehicle does not relieve NAC of its statutory obligation under the Code, but they do not cite any caselaw in support. (*See* R. 36, Smith and Simpson Mem. at 6.) The Court's research yielded at least one Illinois appellate case that hinted that a rental agency's statutory obligation survives a contractual breach. *See Garrott*, 606 N.E.2d at 219-23. That opinion, however, did not discuss why a statutory obligation might survive and concluded by holding that the contractual obligation superceded any statutory obligation and thus did not discuss the relevant Code sections. *Id.* at 244 ("we need not rule on the trial court's interpretation and construction of Hertz's statutory obligation to indemnify third-party claimants"). Thus, without any clear guidance from the Code or the Illinois courts, we are reluctant to impose an underlying statutory obligation on NAC. Furthermore, even if we were to impose such an obligation, the parameters of the obligations of self insurers are undecided, and the parties' briefs evidence the widely-divergent requirements each party urges us to impose. This Court's holding validating the contractual limitation, however, obviates the need to rule on these undecided issues of state law. Therefore, although we sympathize with Smith and Simpson's predicament, the Court concludes that NAC bears no financial responsibility to Smith and Simpson. As such, TIG, NAC's excess liability insurer, is also relieved of any responsibility to defend or indemnify the Bennett estate.

## CONCLUSION

For the reasons set out herein, NAC and TIG's motions for summary judgment are granted, (R. 30-1, 33-1), and Smith and Simpson's motion is denied, (R. 35-1). The Clerk of the Court is instructed to enter judgment pursuant to Federal Rule of Civil Procedure 58 in favor of NAC and TIG and against Smith and Simpson.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: February 3, 2003